IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|  |  |  |
|---|---|---|
| TERRY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08-2056-STA-dkv |
| | ) | |
| CARGILL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

ORDER GRANTING MOTION FOR LEAVE TO FILE
(DOCKET ENTRY 40)
ORDER GRANTING DEFENDANT CARGILL'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 25)

---

On January 14, 2008, Plaintiff Terry Lewis and eight other individuals filed a joint pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.[1] (Docket Entry ("D.E.") 1). United States District Judge J. Daniel Breen issued an order on January 29, 2008 that, inter alia, severed the actions and directed the Clerk to open a new civil action for each plaintiff. (D.E. 2 at 2.)

On April 21, 2008, Judge Breen entered an order dismissing Defendants Martin Crowder, Amanda Jordan, Tim Campbell, and Joe Sparks and to issue process for Cargill, Inc. ("Cargill") on Plaintiff's Title VII claims. (D.E. 6.) On May 21, 2008, the case

---

[1] Plaintiff's claims under 42 U.S.C. § 1981, which prohibit racial discrimination in the making and enforcing of private contracts, are analyzed under the Title VII McDonnell Douglas/Burdine framework. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). The Court's conclusion that Lewis fails to establish a Title VII prima facie case governs the outcome of these issues, therefore, claims under § 1981 will not be addressed separately.

was reassigned to the undersigned judge.

Plaintiff's amended complaint contained a claim of race discrimination and a claim of retaliation. On June 10, 2008, Cargill filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 9.)  On July 8, 2008, Plaintiff responded to the motion to dismiss. (D.E. 12.) On April 7, 2009, the Court entered an order granting Defendant Cargill's motion to dismiss Plaintiff's claim of retaliation and denied Defendant Cargill's motion to dismiss Plaintiff's claim of race discrimination. (D.E. 33.)

On March 18, 2009, Cargill filed a motion for summary judgment. (D.E. 25.)  On April 15, 2009, Plaintiff filed his response. (D.E. 34.) On May 27, 2009, Cargill filed a motion for leave to file a reply to Plaintiff's response. (D.E. 40.)  The motion (D.E. 40) is GRANTED.  The Court has considered Defendant's reply brief attached as an exhibit to the motion. (D.E. 40-2, Exhibit A.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation

omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).

When ruling on a motion for summary judgment the court may consider "pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits." " Fed. R. Civ. P. 56(c). "Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit." Woodruff v. National Life Ins. Co., 2006 WL 2792204 (E.D. Tenn. 2006)(citing Guzman v. Denny's Inc., 40 F. Supp.2d 930, 935 n. 3 (S.D. Ohio 1999)).  "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal Rule of Civil Procedure 56(e). Documents which do not meet those requirements cannot be considered by the court." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n. 20 (8th Cir. 2000); see also Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000)(a court may consider "properly authenticated and admissible documents or

exhibits" when evaluating a summary judgment motion); 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, <u>Federal Practice & Procedure</u>, § 2722, at 379-80 & 382-84 (1988)("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").[2]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted).  The Court's function

---

[2]     Documents submitted which do not comply with the requirements of Rule 56(e) must be disregarded. <u>See</u> <u>Dole v. Elliott Travel & Tours, Inc.</u>, 942 F.2d 962, 968-69 (6th Cir. 1991); <u>State Mutual Life Assurance Co. of America v. Deer Creek Park</u>, 612 F.2d 259, 264 (6th Cir. 1979). Plaintiff's response to Cargill's motion for summary judgment includes emails, photographs, and documents generated by the Tennessee Occupations Safety and Health Administration ("TOSHA"). The documents are offered without any supporting affidavit to verify their authenticity. The Court has reviewed the documents despite the fact that the documents were not properly authenticated.

is not to weigh the evidence, judge credibility, or in any way
determine the truth of the matter. <u>Liberty Lobby</u>, 477 U.S. at 249.
Rather, the inquiry is "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-
sided that one party must prevail as a matter of law." <u>Id.</u> at 251-
52.

I.   <u>Relevant Facts</u>

        The relevant facts follow:[3]

    <u>Lewis' Employment at Cargill and Knowledge of Anti-Harassment</u>

                            <u>Policies</u>

    1.   Plaintiff, Terry Lewis ("Lewis"), has worked for Cargill
         at its Second Street grain elevator (the "Facility") since
         July of 1999, when Cargill purchased the Facility from
         Continental Grain Company. ((Affidavit of Tim Campbell
         ("Campbell Aff."), D.E. 27, Exhibit A, at ¶ 3; Deposition
         of Terry Lewis ("Lewis Dep."), D.E. 25-3, relevant excerpts
         attached as Exhibit B, at pp. 21:8-15.)

    2.   Prior to July 1999, Lewis worked at the same facility as
         an employee of Continental Grain. (Lewis Dep. at pp. 21:12-

---

[3]     The Court's task in evaluating Defendant's motion for summary judgment
is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which
provides,

        the opponent of a motion for summary judgment who disputes any of the
        material facts upon which the proponent has relied pursuant to
        subsection (2) above shall respond to the proponent's numbered
        designations, using the corresponding serial numbering, both in the
        response and by affixing to the response copies of the precise
        portions of the record relied upon to evidence the opponent's
        contention that the proponent's designated material facts are at
        issue.

Plaintiff objects to paragraphs 28-51 but has not affixed to the "objections"
copies of the portions of the record relied upon to evidence his dispute.
Defendant's undisputed material facts contain paragraphs 1-44; there are no
paragraphs 45-51. The Court has attempted to construe the undisputed facts from
Plaintiff's verified complaint, the record excerpts of deposition testimony,
attached as exhibits to Defendant's motion and reply, and the verified exhibits
attached to the affidavit of Timothy Campbell, and discerns no basis for
Plaintiff's objections to these paragraphs. The affidavits attached to Plaintiff's
response were stricken by previous order of the Court. Therefore, the Court
includes paragraphs 28-44 as undisputed.

21.)

3. In his current position, Lewis is responsible for mixing grain received by the Facility before it goes out to river barges to be transported to other locations. (Id. at pp. 26:8-27:9.)

4. Lewis is a member of Teamsters Local 667 (the "Union"). (See id. at pp. 28:21-29:1.)

5. During the relevant time period, there were approximately thirteen production employees at the Facility. (Campbell Aff. at ¶ 4.)

6. All but one of those employees was African American. (Id.)

7. Throughout his employment, Lewis has been required to comply with Cargill's policies and procedures and the guidelines outlined in the collective bargaining agreement that governs the relationship between Cargill and the Union. (Lewis Dep. at pp. 29:2-7, 30:6-10, 31:16-24.)

8. Lewis is aware of Cargill's policy against harassment, which directs any employee who believes that he or she has been subjected to alleged harassment or illegal discrimination to lodge a complaint with the Facility's Human Resources Manager, the Business Unit HR Manager or Cargill's Employee Relations Department. (Campbell Aff. at ¶ 5, see Lewis Dep. at pp. 34:7-35:14.)

9. This policy provides a clear avenue for employee complaints regarding alleged racial harassment and obligates Cargill to take timely steps to investigate and correct offending behavior following those complaints. (Campbell Aff. at ¶ 5.)

10. Lewis is also aware that he may file a Union grievance regarding any alleged harassment and/or discriminatory conduct. (Lewis Dep. at pp. 35:5-14.)

11. Lewis has not complained about purported harassment to the Facility's management staff or filed a grievance relating to workplace harassment. (Id. at pp. 58:3-60:11.)

Lewis' Lack of Evidence of Asbestos Exposure

12. Lewis has no knowledge that airborne asbestos fibers have been found within the Facility at any time. (Id. at pp. 40:20-41:4, 43:18-44:1, 47:3-9, 51:23-52:2.)

13. Lewis has no knowledge that any material in the Facility has ever been found to contain asbestos. (Id. at pp. 41:11-22, 45:13-21.)

14. Lewis has no evidence that Cargill discovered the presence of airborne asbestos fibers at the Facility since the date it purchased the elevator. (See id. at pp. 41:11-42:4.)

15. In December 2006, Cargill removed broken floor tiles from an area of the Facility due to a concern that they may have contained asbestos. (Campbell Aff. at ¶ 8; see Lewis Dep. at pp. 42:8-16, 45:4-21.)

16. This removal was performed by an environmental remediation contracting company on December 13, 2006. (Campbell Aff. at ¶ 8; see Lewis Dep. at pp. 42:8-16, 45:4-21, 46:24-47:12.)

17. Cargill hired an environmental services company to conduct air monitoring during the removal. (Campbell Aff. at ¶ 8; see Lewis Dep. at pp. 45:22-46:23.)

18. This testing found that the air quality in the area of the floor tiles during their removal satisfied all applicable standards. (Campbell Aff. at ¶ 8; see Lewis Dep. at pp. 46:24-47:12.)

19. Lewis admits he has no basis to suggest that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos and cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (Lewis Dep. at pp. 41:11-22, 42:13-16, 46:24-47:12.)

20. In February 2007, the Tennessee Occupational Safety and Health Administration ("TOSHA") conducted asbestos testing on materials in the Facility in response to an anonymous complaint. (Campbell Aff. at ¶ 11; see Lewis Dep. at pp. 47:23-48:22.)

21. TOSHA sampled and tested each of seven areas that had been identified as areas of concern by the complainant through an independent laboratory. (Campbell Aff. at ¶ 11; see Lewis Dep. at pp. 48:17-49:8, 49:18-24.)

22. TOSHA informed Cargill that it did not detect asbestos fibers in any of the seven samples it took during the inspection. (Campbell Aff. at ¶ 11; see Lewis Dep. at pp. 49:9-17.)

23. Lewis bases his belief that asbestos was present in the Facility on a warning sign that was posted in the vicinity of the broken floor tile in the fall of 2006. (D.E. 1, pp.

2-3.)

24. Pursuant to its asbestos safety and removal policies, Cargill posted this sign as a precautionary measure until the tiles could be removed. (Campbell Aff. at ¶¶ 6-7.)

25. Lewis concedes that no health care provider has informed him that he has been exposed to asbestos, and specifically admits that he has "no evidence to suggest that [he has] ever been exposed to asbestos at all." (Lewis Dep. at pp. 49:25-50:20, 52:3-6.)

26. Lewis concedes that to the extent that he was exposed to asbestos, that exposure occurred in the course and scope of his employment. (Id. at pp. 50:21-51:9.)

### Lewis' EEOC Charge and Complaint

27. On January 27, 2007, Lewis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Cargill had assigned him to work in areas contaminated with asbestos because of his race. (Id. at pp. 60:20-61:6; January 27, 2007 EEOC Charge ("Charge"), attached as Exhibit C.)

28. The Charge does not address any claim for alleged racial harassment or for racial discrimination in connection to an alleged failure to promote. (Charge.)

29. On January 14, 2008, Lewis and eight other individuals filed a joint Complaint against Cargill, asserting that Cargill had discriminated against them on the basis of their race by requiring them to work in asbestos-contaminated areas and retaliated against them for complaining about alleged discrimination to TOSHA and/or the EEOC, among other claims. (D.E. 1.)

30. On January 29, 2008, the Court severed that action into nine separate lawsuits, including the instant case. (January 29, 2008 Order, D.E. 2.)

31. On June 10, 2008, Cargill moved to dismiss each of Lewis' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Cargill's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, D.E. 9.)

31A. On April 7, 2009, the Court issued its Order Partially Granting and Partially Denying Defendant Cargill, Inc.'s Motion to Dismiss. (April 7, 2009 Order. D.E. 33.) The Court denied Cargill's Motion with respect to the race discrimination claim, but dismissed Lewis' retaliation claim. (Id.)

Lewis' Claim for Race Discrimination

32. Lewis specifically admitted that he has no evidence that
he was required to work in areas allegedly contaminated
with asbestos because of his race, testifying during his
deposition as follows:

Q:   Do you contend that Cargill required you to
work in areas that were allegedly contaminated
by asbestos and that was done due to your race?

A:   I don't know.

Q.   Have you ever been a management employee of
the company?

A:   No.

Q:   I take it by your answer you don't have any
evidence to show that you were being asked to
work in a particular location because of your
race. Correct?

A:   No.

Q.   You agree with that?

A.   Uh-huh.

(Lewis Dep. at pp. 52:18-53:7.)

33. Lewis has no evidence to suggest there were any Caucasian
production employees working at the Facility at the time
he contends he was exposed to asbestos that were not
required to work in the same areas as him. (Id. at pp.
53:8-12.)

Lewis' Claim for Retaliation

34. Lewis testified that he does not believe that he was
"retaliated against in any way for having filed" his
Charge. (Id. at pp. 62:18-24.)

35. Lewis alleges that Cargill retaliated against him "by
threatening [him and the other plaintiffs] with being laid
off, if they refused to sign documents which would
substantiate to the contrary Plaintiff's claims of asbestos
exposure." (D.E. 1, p. 5.)

36. Lewis alleges that Cargill made this alleged threat on or
about January 12, 2007. (D.E. 1, p.5; Lewis Dep. at pp.
60:20-61:6; Charge.)

37. Lewis also admits that he did sign the documents to which
he refers and points to no evidence suggesting that he was

suspended in connection thereto. (D.E. 1, p. 5; <u>see</u> Lewis Dep. at pp. 62:18-24.)

38. Lewis has no evidence that Cargill knew he was seeking relief from the EEOC until after it received a copy of the Charge through the mail. (Lewis Dep. at pp. 61:20-62:17.)

39. Although Lewis contends in his Complaint that an employee of the Facility filed a TOSHA complaint before Cargill made its alleged threat, he concedes that he did not file a complaint. (D.E. 1, p. 5; Lewis Dep. at pp. 47:13-22.)

40. Lewis testified that he was not even aware that any individual had filed a complaint with TOSHA regarding purported asbestos-related problems at the Facility. (Lewis Dep. at pp. 47:13-19.)

### Lewis' Claim for Hostile Work Environment

41. Lewis asserts that Cargill employees have subjected him to two alleged incidents that he believes to have been harassing: an occasion where Tim Adams, a Cargill supervisor purportedly asked Lewis and a female coworker "how are you girls doing"; and an occasion where Adams purportedly asked Lewis and the same coworker whether one of them could "take [his] shoes off and rub [his] foot." (<u>Id.</u> at pp. 54:6-58:2.)

42. Lewis has not produced any evidence regarding the context in which the statements were made that would support a conclusion that they were somehow racially motivated. (<u>See id.</u>)

43. Lewis surmises that the comments were race-based because he is "not a female" and that Adams "h[as] a wife" and could have asked her to rub his feet. (<u>See id.</u>)

44. The union steward is not a member of Cargill's management staff or human resources department and is not otherwise authorized to accept complaints of harassment on Cargill's behalf. (<u>See</u> Campbell Aff. at ¶ 5.)

## II. <u>Legal Analysis</u>

### A. <u>Racial Discrimination Based on Requirement that Lewis Work in Asbestos Contaminated Environment</u>

The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no

direct evidence of discrimination.[4]  That method has been summarized
as follows:

> First, the plaintiff has the burden of proving by the
> preponderance of the evidence a prima facie case of
> discrimination. Second, if the plaintiff succeeds in
> proving the prima facie case, the burden shifts to the
> defendant "to articulate some legitimate nondiscriminatory
> reasons for the employee's rejection." . . . Third, should
> the defendant carry this burden, the plaintiff must then
> have an opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the
> defendant were not its true reasons, but were a pretext for
> discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)

(citations omitted).  "The ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against the

plaintiff remains at all times with the plaintiff."  Id. at 253.

    To establish a prima facie case of discrimination, Plaintiff

must demonstrate:

> (1) he [or she] was a member of a protected class; (2) that
> he [or she] suffered an adverse employment action; (3) that
> he [or she] was qualified for the position; and (4)
> circumstances indicated that his [or her] race played a
> role in the adverse employment action.

See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Braithwaite

v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001). Put differently,

element (4) requires Plaintiff to show, that for the same or similar

conduct, he was treated differently than similarly situated

---

[4]     Plaintiff alleges, but does not provide credible, material evidence of
direct discrimination "which, if believed requires a conclusion that unlawful
discrimination was at least a motivating factor in the [Defendant's] actions" and
"does not require a factfinder to draw any inferences" to reach that conclusion.
Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 470 (6th Cir.
2005). "Evidence of discrimination is not considered direct evidence unless a[n
improper] motivation is explicitly expressed." Amini v. Oberlin College, 440 F.3d
350, 359 (6th Cir. 2006). Because the Court's review of the record finds no
material evidence of direct discrimination the Plaintiff must establish a prima
facie case of discrimination pursuant to the McDonnell Douglas formulation from
which a discriminatory motive may be inferred.

employees.  The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant respects.  Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002).  See also Clay v. United Parcel Service, Inc., 501 F.3d 695, 703 (6th Cir. 2007).

Lewis' charge of discrimination states that "Blacks and other minority employees were unaware of the presence of asbestos as they were routinely assigned to the contaminated area... No White workers have been placed in the hazardous areas." (D.E. 1, Charge.) The parties agree that Plaintiff is a member of a protected class and that he was qualified for his position.  Defendant Cargill argues that Plaintiff fails to establish a prima facie case of race discrimination because he cannot demonstrate that he suffered an adverse employment action or that he was treated differently than similarly situated individuals of an unprotected class.  (D.E. 25, p. 2.)

Defendant has provided the Court with the affidavit of Timothy Campbell, former Farm Services Croup Operations ("FSG") Leader at Cargill, who was responsible for the Cargill grain elevator where Plaintiff was employed from November 15, 1999, until January 3, 2008. (D.E. 42, Exhibit A, p. 1.)  Campbell states that Cargill employed thirteen (13) production employees during his tenure and all but one of those employees was African-American. (Id. at 2.)  Campbell states that in September 2006, Tom Zemanick, Cargill's United States Grain Plant Operations Manager, observed some broken floor tiles underneath bin 101 in the southeast corner of the elevator.  (Id.)  Even though no manager had information or knowledge that the tiles contained asbestos, Zemanick directed that the tiles be removed and a warning

sign was posted. (Id.)  An environmental remediation contracting company removed the broken tiles on December 13, 2006, and an environmental services company conducted air monitoring during the removal. (Id.) The air quality during removal satisfied all applicable standards. (Id.; Exhibit 2, p. 6.) Additional testing was performed by TOSHA isn February 2007 and no asbestos fibers were detected. (Id. at 3; Exhibit 3.)

Lewis responds that he was required to sweep and clean broken floor tiles from 2000 until 2006.  He relies on the fact Cargill posted a warning sign and an unauthenticated "courtesy notification for asbestos removal" which Defendant filed with the Memphis Shelby County Health Department that the floor tiles were to be removed in December 2006, as proof that the tiles contained asbestos. (D.E. 34, p. 9.)

Asbestos is dangerous only when airborne and inhaled See generally 29 C.F.R. § 1910.1001(c)(establishing limits on the concentration of airborne asbestos to which an employee can safely be exposed).  The "courtesy" notification does not establish that the tiles were found to contain asbestos and does not correlate to airborne asbestos which is measured by air monitoring. The Court notes that Lewis' unauthenticated exhibits also contain a statement that "a survey completed by a professional asbestos survey company in 2000 found no asbestos" on the Cargill site. (Id. at 8.)

Plaintiff has provided no affidavit or authenticated document which rebut Campbell's affidavit or which establish that the floor tiles contained asbestos, that he was exposed to asbestos fibers, or that the air monitoring revealed any airborne asbestos. Lewis has no evidence that Cargill discovered the presence of airborne asbestos

fibers at the Facility since the date it purchased the elevator. (See id. at pp. 41:11-42:4.) Lewis has no knowledge that airborne asbestos fibers have been found within the Facility at any time. (Id. at pp. 40:20-41:4, 43:18-44:1, 47:3-9, 51:23-52:2.) Lewis has no knowledge that any material in the Facility has ever been found to contain asbestos. (Id. at pp. 41:11-22, 45:13-21.) Lewis admits he has no basis to suggest that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos and cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (Lewis Dep. at pp. 41:11-22, 42:13-16, 46:24-47:12.) Lewis concedes that no health care provider has informed him that he has been exposed to asbestos, and specifically admits that he has "no evidence to suggest that [he has] ever been exposed to asbestos at all." (Lewis Dep. at pp. 49:25-50:20, 52:3-6.)

Lewis specifically admitted that he has no evidence that he was required to work in areas allegedly contaminated with asbestos because of his race, testifying during his deposition as follows:

> Q:   Do you contend that Cargill required you to work in areas that were allegedly contaminated by asbestos and that was done due to your race?
>
> A:   I don't know.
>
> Q.   Have you ever been a management employee of the company?
>
> A:   No.
>
> Q:   I take it by your answer you don't have any evidence to show that you were being asked to work in a particular location because of your race. Correct?
>
> A:   No.
>
> Q.   You agree with that?

A.    Uh-huh.

(Lewis Dep. at pp. 52:18-53:7.) Lewis has no evidence to suggest
there were any Caucasian production employees working at the Facility
at the time he contends he was exposed to asbestos that were not
required to work in the same areas as him. (Id. at pp. 53:8-12.)

In the response to the motion for summary judgment, however,
Lewis alleges that "Mike Thompson ... was not required to work in
these contaminated areas" and cites the Court to Mickens v. Cargill,
No. 01-2535-BBD (W.D. Tenn. July 23, 2002).  The claims from the case
which involved Thompson, a white employee, were for racial
discrimination by wage disparity and layoffs.  Those claims were
determined to be without merit because the wage disparity was
corrected by Cargill upon the discovery of a payroll error and
Thompson was not treated differently than the minority employees.
(Id., D.E. 18.) Defendant replies that Lewis alleges that Thompson
was not required to work in the allegedly asbestos-contaminated areas
in 2001, seven years before he filed this lawsuit and six years
before he filed the EEOC charge on which this race discrimination
claim is based. The 2001 case provides no support for Lewis' present
claims.

Because Plaintiff fails to establish by affidavits or other
evidence that he suffered an adverse employment action or "was
treated differently than similarly-situated non-minority employees,"
Mitchell, 964 F.2d at 582-83, Plaintiff fails to state a prima facie
case of race discrimination.  Bald assertions and conclusory
statements fail to provide any factual support for Lewis' claim of
race discrimination. Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir.
1996).  There are no genuine issues of material fact as it relates

to Plaintiff's claim of race discrimination, and Defendant is entitled to judgment as a matter of law.

    B.   <u>Retaliation</u>

In order to establish a <u>prima</u> <u>facie</u> case of retaliation, Lewis must show:

> (1) that he was engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of his protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff; and (4) that there is a causal connection between the protected activity and the adverse employment action.

<u>Stouss v. Michigan Dept. of Corrections</u>, 250 F.3d 336, 342 (6th Cir. 2001); <u>see</u> <u>also</u> <u>Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.</u>, 783 F.2d 50, 54 (6th Cir. 1986).  Regarding the definition of "protected activity," Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees.. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a), quoted in <u>DiCarlo v. Potter</u>, 358 F.3d 408, 420 (6th Cir. 2004).

If the plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden then shifts to the defendant to come forward with a legitimate, non-discriminatory and non-retaliatory reason for the adverse action against the plaintiff. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506-507 (1993).

Plaintiff's complaint alleges that Cargill retaliated against him "by threatening [him and the other plaintiffs] with being laid off, if they refused to sign documents which would substantiate to the contrary Plaintiff's claims of asbestos exposure." (D.E. 1, p.

5.) Plaintiff alleges that Cargill made the threat on January 12, 2007. (D.E. 1, p. 5.) He did not file his charge until January 29, 2007. (D.E. 25-3, Exhibit C.) Plaintiff testified in his deposition that he did sign the "documents" to which he refers and pointed to no evidence suggesting that he was suspended in connection thereto. (D.E. 1, p. 5; <u>see</u> Lewis Dep. at pp. 62:18-24.) Plaintiff testified that he has no evidence that Cargill knew he was seeking relief from the EEOC until after it received a copy of the Charge through the mail. (Lewis Dep. at pp. 61:20-62:17.)

Defendant contends that Plaintiff cannot demonstrate that he suffered any adverse action and also concedes he did not file an administrative charge until after the action about which he complains. (D.E. 35, p. 2.) Defendant also points out that although Lewis contends that a TOSHA complaint was filed before the alleged threat was made, Lewis admitted that he did not file the TOSHA complaint and the filing of the TOSHA complaint was not protected activity. (D.E. 1, p. 5; Lewis Dep. at pp. 47:13-22; 42 U.S.C. 2000e-3(a).) Furthermore, Lewis testified during his deposition that he was not aware that a TOSHA complaint had been filed. (Lewis Dep. at pp. 47:13-19.)

The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of [plaintiff's] employment because of [the] employer's conduct." <u>Smith v. City of Salem</u>, 378 F.3d 566, 575 (6th Cir. 2004)(quoting <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999); <u>Koscis v. Multi-Care Management, Inc.</u>, 97 F.3d 876, 885 (6th Cir. 1996). "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration

of job responsibilities. <u>Hollins</u>, 188 F.3d at 662. "Examples of adverse employment actions include firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indicies unique to a particular situation." <u>Smith</u>, 378 F.3d at 575-76, quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998); <u>See also</u> <u>Plautz v. Potter</u>, 156 Fed. Appx. 812, 817 (6th Cir. 2005), citing <u>Hollins</u>, 188 F.3d at 662 ("[Employer's] threats to discharge or discipline [employee] were not adverse employment actions because it is settled in this circuit that a threat to discharge is not an adverse employment action.").

Plaintiff's reply conflates his claims of racial discrimination and retaliation. (D.E. 34, p. 3.) He provides no legal citation supporting his allegation that his "retaliation claim does not fail because the adverse actions occurred before the filing of the EEOC charge" (<u>id.</u>) and he fails to allege a significant change in employment status which qualifies as an adverse action. To the contrary, Lewis testified at his deposition that he does not believe that he was "retaliated against in any way for having filed" his Charge. (<u>Id.</u> at pp. 62:18-24.) The Court finds no action by Cargill which amounts to a materially adverse change in the terms and conditions of Lewis' employment. Plaintiff's allegations do not create a genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

C.  <u>Racial Harassment & Hostile Work Environment</u>

The elements of a Title VII hostile work environment claim are as follows:

1) the employee was a member of a protected class; 2) the

employee was subjected to unwelcome harassment; 3) the harassment complained of was based upon race; 4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive working environment; and 5) there is some basis for employer liability.

Russell v. University of Toledo, 537 F.3d 596, 608 (6th Cir. 2008));

Clay, 501 F.3d at 706.

"Actionable harassment exists if 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Farmer v. Cleveland Public Power, 295 F.3d 593, 604 (6th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 2001). The standard for whether an employee has been subjected to a hostile work environment has both an objective and a subjective component. Newman v. Federal Express Corp., 266 F.3d 401, 405 (6th Cir. 2001). There is no Title VII violation if the conduct at issue "is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.[5]

[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance.

Id. at 23; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998) (recognizing the necessity of applying

---

[5] "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. at 21-22.

"[c]ommon sense" and "an appropriate sensitivity to social context").
As the Supreme Court states in Faragher v. City of Boca Raton, 524
U.S. 775 (1998), Title VII is not meant to be a "general civility
code." Id. at 788.

Defendant contends that Plaintiff cannot come forward with
sufficient evidence to create a factual issue with respect to the
fourth element of a prima facie case.  Lewis contends that his
assignment to the work area that he believes contained asbestos
constitutes racial harassment. As set forth in the preceding section,
Lewis has not established a genuine issue of material fact that his
work area contained asbestos.  Lewis testified in his deposition
about only two alleged incidents that he believes to have been
harassing: an occasion where Tim Adams, a Cargill supervisor
purportedly asked Lewis and a female coworker "how are you girls
doing"; and an occasion where Adams purportedly asked Lewis and the
same coworker whether one of them could "take [his] shoes off and rub
[his] foot." (Id. at pp. 54:6-58:2.) Despite Lewis' testimony under
oath that these two incidents were the only incidents of harassment,
Lewis contends in his response that he saw some racially offensive
language scratched into a portable bathroom that was located outside
of the Facility.  (D.E. 34, p. 4) He does not, however present any
evidence demonstrating that the language was written by any Cargill
employee or supervisor or demonstrating that Cargill did not remove
the offensive language upon notification that it existed.[6]

Plaintiff's reply also alleges that "all the black employees

---

[6]      Employers are generally not liable for non-employee conduct outside the
workplace or for employee conduct within the workplace where the employer takes
prompt remedial action upon learning of the offensive behavior. Fleenor v. Hewitt
Soap Co., 81 F.3d 48, 51 (6th Cir. 1996).

were called boys and girls"[7] and a supervisor made the statement that Plaintiff and other workers did not need a lunch break and "he would work us like mules." (Id. at 4.)   These allegations, however, directly contradict his deposition testimony. Lewis was asked during the deposition, whether the two incidents were "all the racial comments" and were "everything you can think of as to how you believe you've been discriminated or harassed because of your race," and he responded "[t]hat's it" and "yes." (D.E. 25-3, pp. 57:19- 58:2.)

Lewis' allegations do not rise to the level of extreme conduct required to state a claim for a racially hostile work environment. There is no indication that the cited conduct unreasonably interfered with Plaintiff's work performance. Simply stated, extensive analysis is not required to reach the conclusion that the cited incidents did not constitute the type of sufficiently severe or pervasive hostile work environment to alter the conditions of Lewis' employment. Lewis has failed to come forward with evidence demonstrating he was subjected to a racially hostile work environment during his employment at Cargill and Defendant is entitled to judgment as a matter of law.

Defendant Cargill's motion for summary judgment (D.E. 25) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts

---

[7]    The allegation in the original joint complaint pertained to Plaintiff Seay, not to Lewis. A plaintiff's knowledge of acts of harassment directed against other employees is not necessarily sufficient to establish a hostile work environment. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 226 (6th Cir. 2008).

in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous.  Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a).  See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue.  Id. at 445-46. The same considerations that lead the Court to dismiss this case compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for

the Sixth Circuit within thirty (30) days.

   IT IS SO ORDERED this 24th day of March, 2010.

                              **s/ S. Thomas Anderson**
                              S. THOMAS ANDERSON
                              UNITED STATES DISTRICT JUDGE